UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **04CR 10074 JLT** |
| v.   ) | CRIMINAL NO. |
| ) | |
| PHILLIP W. HYDE   ) | VIOLATION: |
| Defendant   ) | 18 U.S.C. §1341 |
| ) | (Mail Fraud) |
| ) | |

INFORMATION

THE UNITED STATES ATTORNEY CHARGES:

I.   **COUNT 1 - MAIL FRAUD (18 U.S.C. §1341)**

1.   At all times material to this Information, defendant PHILLIP W. HYDE ("HYDE") was an individual living in Massachusetts.

2.   HYDE's mother, Marian Hyde, worked for the Chicago Public School System from a date unknown until she retired on or about June 22, 1968. Thereafter, the Chicago Teachers' Pension Fund, an Illinois public employee pension fund, mailed pension checks to Marian Hyde, in care of her son PHILLIP W. HYDE in Massachusetts.

3.   Marian Hyde died on April 28, 1982. However, the Chicago Teachers' Pension Fund remained unaware of her death and continued to mail pension checks to Marian Hyde in care of PHILLIP W. HYDE.

4. Beginning on or about April 28, 1982 and continuing until in or about August 2000, in the District of Massachusetts and elsewhere, the defendant herein,

PHILLIP W. HYDE

did devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises.

5. The scheme consisted essentially of HYDE cashing the pension checks sent to his deceased mother, failing to notify the Chicago Teachers' Pension Fund of his mother's death, and making false and fraudulent misrepresentations to the Chicago Teachers' Pension Fund to lead them to believe that his mother was still alive.

6. In furtherance of this scheme, HYDE did the following, among other things:

    a. HYDE failed to notify the Chicago Teachers' Pension Fund of Marian Hyde's death.

    b. HYDE continued to receive monthly pension checks from the Chicago Teachers' Pension Fund, on which he forged his mother's signature and then deposited the proceeds of those checks in a joint account in the names of HYDE and his mother.

    c. On or about January 12, 1987, HYDE sent a letter to the Chicago Teachers' Pension Fund which purported to be from Marian Hyde and which requested a change of address for the

pension checks and that they be sent to Marian Hyde in care of PHILLIP HYDE. HYDE forged his late mother's signature to the letter and change of address form.

  d. On or about June 22, 1987, HYDE forged his late mother's signature to a tax withholding certificate, requesting a certain amount be withheld from her monthly pension check, then mailed that form to the Chicago Teachers' Pension Fund.

  e. In or about November, 1997, HYDE forged his late mother's signature to a form sent by the Chicago Teachers' Pension Fund to verify that Marian Hyde was receiving her monthly pension checks. HYDE mailed that form, along with a letter, back to the Chicago Teachers' Pension Fund. The letter, purporting to be from "The Hydes," stated falsely that Marian Hyde "is frail and has good days and bad days and is difficult to get out of the house."

  f. In or about July 2000, HYDE made false oral representations by telephone to the Chicago Teachers' Pension Fund concerning his late mother. A Chicago Teachers' Pension Fund employee had called because Marian Hyde's name had recently showed up on a Pension Benefits Information listing which indicated that she had died. HYDE stated falsely that his mother was ill, had suffered a stroke and was unable to speak on the telephone. He further falsely stated that his mother was not hospitalized, but that HYDE was taking care of her at home.

g. In order to avoid having his fraudulent scheme discovered, on or about August 11, 2000, HYDE mailed a letter to the Chicago Teachers' Pension Fund, which falsely represented that Marian Hyde had died on August 9, 2000 after being comatose since July 7, and that her medical bills had been paid "by our company's umbrella policy."

h. In a further attempt to avoid having his fraudulent scheme discovered, in or about August 2000, HYDE caused a death notice to be placed in the Boston Globe newspaper which falsely represented that Marian Hyde had died on August 9, 2000.

7. Between May 1, 1982 and August 2000, the Chicago Teachers' Pension Fund issued monthly checks to Marian Hyde, which PHILLIP W. HYDE converted to his personal use, totaling about $269,411.53. In addition, the Chicago Teachers' Pension Fund sent checks totaling $9,019.25 to Marian Hyde, which PHILLIP W. HYDE converted for his personal, for the purpose of reimbursing Marian Hyde for overpayment of health insurance premiums.

8. Also as a result of HYDE's fraudulent scheme, the Chicago Teachers' Pension Fund paid $25,222.65 to the Internal Revenue Service for tax withholding on monies sent to Marian Hyde, and also paid $14,024.73 in health insurance premiums on behalf of Marian Hyde.

9. In total, by his fraudulent scheme, HYDE caused a loss to the Chicago Teachers' Pension Fund in the amount of $317,678.16.

10. On or about July 1, 2000, in the District of Massachusetts and elsewhere, the defendant herein,

**PHILLIP W. HYDE,**

for the purpose of executing the aforesaid scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and attempting to do so, did cause to be placed in post offices and authorized depositories for mail matter check number 666868 in the amount of $1409.99 drawn on the account of Public Schools Teacher's Pension and Retirement Fund of Chicago to be sent by mail by the United States Postal Service from Chicago, Illinois and did knowingly cause the articles to be delivered by the United States Postal Service, according to directions thereon, to PHILLIP W. HYDE in Massachusetts.

All in violation of Title 18, United States Code, Sections 1341 and 2.

MICHAEL J. SULLIVAN
United States Attorney

By: /s/ Mark J. Balthazard
MARK J. BALTHAZARD
Assistant U.S. Attorney