UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Criminal Docket No. |
| v. | ) | 04-10074-JLT |
| | ) | |
| PHILLIP HYDE, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BICKNELL & SMITH, | ) | |
| | ) | |
| Garnishee | ) | |

## STATUS REPORT

The United States of America and The Board of Trustees of the Public School Teachers'
Pension and Retirement Fund of Chicago, herewith jointly submit a status report regarding the
pending bankruptcy proceeding captioned *In re Phillip W. Hyde*, Case No. 03-14530 (JNF)
(Bankr. D. Mass. 2003).

Attached hereto as Exhibit A is the recent decision of the Honorable Joan M. Feeney of
the United States Bankruptcy Court for the District of Massachusetts, in which Judge Feeney
states that she will take no action on Hyde's *Motion for Court Order, Confirming the Sale
Proceeds of 26 Union Street, Cambridge, MA, as Exempt*, until such time as this Court
determines whether to enforce its post-judgment garnishment order with respect to the proceeds
of the sale of Hyde's property.

Dated: September 30, 2005

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorney,

Michael J. Sullivan


/s/ Christopher R. Donato
Christopher R. Donato
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3303


THE BOARD OF TRUSTEES OF THE PUBLIC
SCHOOL TEACHERS' PENSION AND
RETIREMENT FUND OF CHICAGO,

By its attorneys,

CRAIG AND MACAULEY
  PROFESSIONAL CORPORATION


/s/ Joseph J. Koltun
William R. Moorman, Jr. (BBO#548593)
Joseph J. Koltun (BBO#641117)
Craig and Macauley
  Professional Corporation
Federal Reserve Plaza
600 Atlantic Avenue
Boston, Massachusetts  02210
(617) 367-9500

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I caused a true and accurate copy of the foregoing *Status*

*Report*, to be served on the parties set forth below at the addresses indicated by first-class United

States mail postage prepaid:

Leonard A. Frisoli
Frisoli Associates, P.C.
43 Thorndike Street
Cambridge, MA 02141

Andrew Bram
Bicknell & Smith, LLP
43 Thorndike Street
Cambridge, MA 02141

John H. LaChance
600 Worcester Road
Suite 501
Framingham, MA 01701

Dated: September 30, 2005            /s/ Christopher R. Donato
                                     Christopher R. Donato
                                     Assistant U.S. Attorney

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**PHILLIP W. HYDE,**
    Debtor

Chapter 7
Case No. 03-14530-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the "Debtor's Motion for Court Order, Confirming the Sale Proceeds of 26 Union Street, Cambridge, MA, as Exempt" (the "Motion").[1] Pursuant to his Motion, the Debtor, Phillip W. Hyde (the "Debtor"), seeks a ruling that sale proceeds from his former residence, which he had claimed as exempt, are not liable for any debts that arose prior to the commencement of his Chapter 7 case, including the nondischargeable debt owed to the Board of Trustees of the Public School Teachers'

---

[1] The Court observes that the relief requested by the Debtor falls within the scope of Fed. R. Bankr. P. 7001 because, through his Motion, he seeks both a declaratory judgment and injunctive relief. The Fund, however, did not oppose the Debtor's Motion on procedural grounds. *See* <u>Aegean Fare, Inc. v. Commonwealth of Massachusetts (In re Aegean Fare, Inc.)</u>, 33 B.R. 745, 746 n. 1 (Bankr. D. Mass. 1983)(observing that it was necessary and appropriate to consider debtor's pleadings despite absence of adversary proceeding where it was necessary to effectuate a prompt rehabilitation of the debtor and the verified pleadings contained sufficient information to apprise opposing party of all the issues).

Pension and Retirement Fund of Chicago (the Fund"), which obtained an ex-parte, trustee process attachment against the sales proceeds in the Middlesex Superior Court, Department of the Trial Court, on August 12, 2005.

The Fund filed an Opposition to the Debtor's Motion. The Court heard the matter on August 25, 2005. At the hearing, neither party requested the opportunity to submit evidence, and neither party disputed the material facts germane to the resolution of the issues before the Court. Both parties filed briefs. The issue presented is whether the proceeds from the sale of real property, property which the Debtor had claimed as exempt and which the Trustee abandoned, are protected from the reach of the Fund by operation of 11 U.S.C. § 522(c). A subsidiary issue is whether this Court should order the Fund to release its attachment or find the Fund in contempt for violation of the automatic stay. Another significant issue, and one that this Court finds determinative, is whether this Court should enter any orders relating to the scope of the Debtor's homestead exemption in light of the Post-Judgment Garnishment obtained by the United States with respect to a restitution order issued as part of the Debtor's sentence following criminal conviction for mail fraud after the commencement of his bankruptcy case.

## II. FACTS

The Debtor filed a voluntary Chapter 7 petition on May 28, 2003. On Schedule C-Property Claimed Exempt, the Debtor claimed, pursuant to Mass. Gen. Laws ch. 188, §1, a homestead exemption in the sum of $300,000 for his residence located at 26 Union Street,

2

Cambridge, Massachusetts (the "Property").[2] Other than the Fund and the holders of two

---

[2] The Court takes judicial notice of the Debtor's Schedules as well as the record of proceedings in this case, the adversary proceeding commenced by the Fund in this case, as well as the pleadings filed in a criminal case involving the Debtor in the United States District Court for the District of Massachusetts. *See* In re Nail, 195 B.R. 922 (N. D. Ala. 1996), in which the court stated the following general principles governing judicial notice:

> The Court may take judicial notice of the documents in the debtors' file. Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193 (1925) (court may take judicial notice of and give effect to its own records in another, but interrelated, proceeding, so that district court could take judicial notice of pendency of application for discharge in prior bankruptcy proceedings and thereby preclude discharge in a second voluntary proceeding in respect to the same debts as listed in first proceeding); Cash Inn of Dade, Inc. v. Metropolitan Dade County, 938 F.2d 1239 (11th Cir.1991) (district court may take judicial notice of public records within its files relating to particular case before it or to other related cases); ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir.1981) (court may take judicial notice of its own records or of those of inferior courts); Kinnett Dairies, Inc. v. Farrow, 580 F.2d 1260 (5th Cir.1978) (trial court did not err in taking judicial notice of materials in court's own files from prior proceedings); State of Fla. Bd. of Trustees of Internal Imp. Trust Fund v. Charley Toppino & Sons, Inc., 514 F.2d 700 (5th Cir.1975) (it is not error for a district court to take judicial notice of related proceedings and records in cases before that court); Aloe Creme Lab., Inc. v. Francine Co., 425 F.2d 1295 (5th Cir.1978) (where it was contended on motion for summary judgment that issues had theretofore been decided adversely to plaintiff by reason of a judgment entered in another case brought by same plaintiff, district court had right to take notice of its own files and records, and had no duty to "grind the same corn a second time."); Soley v. Star & Herald Co., 390 F.2d 364 (5th Cir.1968) (judicial notice of a court's prior cases is permitted to support grant of a motion for summary judgment); Ackermann v. United States, 178 F.2d 983 (5th Cir.1949) (in motion to set aside judgment, court could take judicial notice of its own records in related litigation). See also, Job v. Calder (In re Calder), 907 F.2d 953 (10th Cir.1990) (bankruptcy court properly took judicial notice of contents of debtor's Statement of Affairs and Schedule B-1 when denial of discharge was sought for making of false oath or account in or in connection with bankruptcy case); Wilson v. Huffman (In re Missionary Baptist Found. of

3

mortgages on the Property, the Debtor listed few creditors: American Express, MBNA America, and an individual with a disputed claim arising out of an automobile accident.

On August 13, 2003, the Fund filed a "Complaint to Determine Dischargeability of a Debt, Objection to Debtor's Discharge and for Declaratory Relief." While the Fund's adversary proceeding was pending, the Debtor filed a "Motion to Avoid Lien Pursuant to 11 U.S.C. § 522(f)," seeking to avoid its judicial lien, namely a writ of attachment issued by the United States District Court for the District of Massachusetts in the sum of $317,678.16. On June 18, 2004, this Court overruled the Fund's Opposition to the Debtor's Lien Avoidance Motion and avoided the lien, citing Patriot Portfolio, LLC v. Weinstein (In re Weinstein), 164 F.3d 677, 687 (1st Cir. 1999), *cert. denied*, 527 U.S. 1036 (1999), in which the

---

Am., Inc.), 712 F.2d 206 (5th Cir.1983) (a court may take judicial notice of the record in prior related proceedings and draw reasonable inferences therefrom); Mann v. Shepard (In re Gervich), 570 F.2d 247 (8th Cir.1978) (bankruptcy court properly took judicial notice of bankrupt's verified schedule of creditors revealing that he was indebted at time agreement transferring property to him and his wife was entered into and that at least some of those debts were still owed at time petition in bankruptcy was filed); ITT v. Lam (In re Colorado Corp.), 531 F.2d 463 (10th Cir.1976) (bankruptcy judge properly took judicial notice of files of court relating to the controversy as to whether claims of foreign creditors could be allowed for purposes of voting for trustee in bankruptcy); Woodmar Realty Co. v. McLean (In re Woodmar Realty Co.), 294 F.2d 785 (7th Cir.1961), *cert. denied*, 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962) (bankruptcy court was duty bound to take judicial notice of its records and files in cause, and it was duty of reviewing court to take notice of facts which had come to its knowledge through records presented to it on several appeals in same case).

195 B.R. at 924.

4

First Circuit held that the exceptions to the Massachusetts homestead for preexisting liens and prior contracted debts were preempted by §§ 522 (f) and 522(c).[3]

On the same day the Court determined the Lien Avoidance Motion, it issued a Memorandum and Order, entering judgment in favor of the Fund on Count I of its Complaint under 11 U.S.C. §523(a)(2)(A). The Court later amended its judgment to provide for prejudgment interest calculated in accordance with Illinois law. The parties subsequently filed a Consent Judgment pursuant to which they agreed to the dismissal of Count II of the Fund's Complaint, through which the Fund purported to state a cause of action under 11 U.S.C. § 727(a)(2), and that the Fund would be entitled to prejudgment interest calculated in accordance with Illinois law in the sum of $197,069.47, as well as post-judgment interest on the entire nondischargeable judgment in the sum of $514,747.63. Thus, this Court in approving the Consent Judgment entered a final order that the Fund held a nondischargeable debt in the sum of $514,747.63.

Additionally, on March 18, 2004, approximately nine and one-half months after the Debtor filed his Chapter 7 case, the United States Attorney for the District of Massachusetts initiated criminal proceedings against the Debtor for mail fraud in connection with his conduct relating to the Fund. *See* Board of Trustees of the Public School Teachers' Pension

---

[3] The Fund appealed this order as well as an order denying its "Motion to Dismiss under § 707(a)." The parties subsequently filed a Stipulation to Dismiss Appeal pursuant to Fed. R. App. P. 42 with respect to the appeal of the allowance of the Lien Avoidance Motion. On September 7, 2005, the United States District Court for the District of Massachusetts affirmed this Court's order denying the Motion to Dismiss under § 707(a).

and Retirement Fund of Chicago v. Hyde (In re Hyde), Adv. P. No. 03-1358, Slip Op. (Bankr. D. Mass. June 18, 2004). In May of 2004, the Debtor pled guilty to mail fraud, and, on April 20, 2005, the United States District Court for the District of Massachusetts sentenced him to one year and one day in prison to be followed by two years of supervised release. In addition, as part of his sentence, in the section captioned "Criminal Monetary Penalties" the district court ordered him to pay restitution to the Fund in the amount of $317,678.68 "to be paid on a scheduled [sic] to be established by the U.S. Probation Officer during the period of supervised release."

On February 14, 2005, the Court entered an order discharging the Debtor from all dischargeable debts. Approximately five months later, on July 7, 2005, the Trustee filed a Notice of Abandonment with respect to the 26 Union Street Property in which he stated the following: "The trustee believes there is no equity over the existing liens. There would be no benefit to the estate if the trustee sold the property."

On August 10, 2005, the Debtor sold the Union Street Property to avoid a mortgagee's foreclosure sale. According to the Debtor,

> [O]n or around August 12, 2005, the Fund, without permission of this Court or seeking relief from the automatic stay, commenced a civil action in the Middlesex Superior Court, Docket No. 05-2845, seeking a temporary restraining order of the Debtor's sale proceeds and obtained an ex-parte trustee process attachment of said sale proceeds against the Debtor's real estate attorney at the closing.

Motion for Court Order at ¶12.

According to the Fund, it commenced an action in the Middlesex Superior Court, Department of the Trial Court, in which it sought, *inter alia*, "(i) to enjoin the transfer to

6

Hyde of any of the net proceeds from the sale of the Property and (ii) a trustee process attachment of any funds held by Hyde's closing attorney and payable to Hyde." The record contains an "Interlocutory Order Continuing Restraining Order in Force," continuing the restraining order issued on August 12, 2005 until August 29, 2005 and a "Summons and Restraining Order" issued by the Middlesex Superior Court, restraining the Debtor from assigning or otherwise alienating "any money, property or payments received by Hyde or for the benefit of Hyde from the sale of the property located at 26 Union Street . . . ."

Additionally, according to the Fund, the United States Attorney's Office also took action to secure the Debtor's obligations under the Restitution Order. The Court takes judicial notice that the United States filed an "Application for Writ of Garnishment" in the United States District Court for the District of Massachusetts on August 16, 2005 and that the district court granted the Application on August 16, 2005, ordering the Clerk of the Court to issue the writ. The Writ of Garnishment, as issued, contained an order requiring Bicknell & Smith, LLP to answer in writing, under oath, within ten (10) days, as to whether it had custody, control or possession of any property owned by the Debtor, including non-exempt, disposable earnings. A Clerk's Notice of Post-Judgment Garnishment also was issued addressed to the Debtor. The record contains a copy of the "Clerk's Notice of Post-Judgment Garnishment." The Notice provides in relevant part the following:

> Your are hereby notified that non-exempt accounts are being taken by the United States of America which has a judgment in the sum of $317,778.68. As of August 15th, 2005, a balance of $317,778.68 remains outstanding.

7

> Also, you are hereby notified that there are exemptions under the law which may protect some of the property from being taken by the Government if you can show that the exemptions apply. Attached is a summary of the major exemptions that apply in Massachusetts. . . .

Attorney Andrew Bram answered the writ on behalf of Bicknell & Smith, stating that he held proceeds from the sale of the Property in the amount of $121,895. On September 13, 2005, the Debtor filed a Claim for Exemption, in which he stated that "the monies garnished pursuant to an Order of this Court dated August 18, 2005 (sic), are exempt from the reach of creditors pursuant to 11 U.S.C. § 522(c), as said monies are the direct sale proceeds of the Defendant's homestead, which was scheduled as exempt in his Chapter 7 Bankruptcy Petition. . . ." The Debtor requested that the district court take no action "until such time as the Bankruptcy Court has made its final ruling.

## III. POSITIONS OF THE PARTIES

### A. The Debtor

The Debtor's Motion is predicated on two assumptions: 1) that the automatic stay is in effect; and 2) his homestead exemption extends to the proceeds of the sale of the Property. He states: "The sales proceeds are exempt by operation of the Massachusetts homestead law, and are further protected from the reach of creditors pursuant to 11 U.S.C. § 522(c)." Moreover, he states that he reserves the right to commence an adversary proceeding against the Fund for damages, sanctions and attorneys' fees pursuant to 11 U.S.C. § 362(h).

The Debtor argues that the Fund admitted in an appellate brief that his homestead exemption survived indefinitely as a result of 11 U.S.C. § 522(c), which provides that

8

exempt property is not liable during or after the case for the satisfaction of all but specific enumerated prepetition debts. Citing <u>Keller v. U.S.</u>, 58 F.3d 1194 (7th Cir. 1995), he maintains that such a judicial admission may not be controverted and has the effect of withdrawing the fact from contention.[4]

　　While recognizing that there appear to be no published Massachusetts cases specifically addressing whether sale proceeds of an exempt asset remain exempt, the Debtor, citing <u>Reed v. Yochem (In re Reed)</u>, 184 B.R. 733 (Bankr. W.D. Tex. 1995), and <u>In re Feiner</u>, No. 02-12235-JNF, Slip op. (Bankr. D. Mass. March 7, 2003), argues that "the substantial majority of courts have [sic] considered this issue and ruled, consistent with the clear wording of the statute, that a post-petition transformation of exempt property into a form of property which could not be exempt under state law, does not render the property suddenly available to creditors." He concludes, based upon <u>S&C Home Loans,</u>

---

[4] In <u>Keller</u>, the court stated:

> Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are 'not evidence at all but rather have the effect of withdrawing a fact from contention.' Michael H. Graham, *Federal Practice and Procedure: Evidence* § 6726 (Interim Edition); *see also* John William Strong, <u>McCormick on Evidence</u> § 254, at 142 (1992). A judicial admission is conclusive, unless the court allows it to be withdrawn; ordinary evidentiary admissions, in contrast, may be controverted or explained by the party. <u>Id.</u> When a party testifying at trial or during a deposition admits a fact which is adverse to his claim or defense, it is generally preferable to treat that testimony as solely an evidentiary admission. Michael H. Graham, *Federal Practice and Procedure* § 6726, at 536-37.

58 F.3d at 1199 n.8.

9

Inc. v. Farr (In re Farr), 278 B.R. 171 (B.A.P. 9th Cir. 2002)(holding that only property exempted under § 522 is protected from the reach of holders of nondischargeable debts),[5] that the net sale proceeds from the Property are for his benefit and must be turned over to him.

B. The Fund

Citing Diversified Mortg. Co., Inc. v. Gold (In re Gold), 246 B.R. 574, 580 (Bankr. D. Mass. 2000), the Fund requests that the Court abstain from determining the Debtor's Motion because its outcome is dependent upon an interpretation of state law, namely the Massachusetts Homestead Act. It also contends that this Court lacks jurisdiction because a determination of the Debtor's Motion will have no conceivable effect on the estate as the under his theory the proceeds are exempt. Alternatively, the Fund argues that the Debtor's Motion lacks merit because 1) the automatic stay is no longer in effect, see 11 U.S.C. § 362(c); 2) § 522(c) does not extend protection to the proceeds derived from the voluntary sale of the Property; and 3) the Massachusetts Homestead Act does not apply to proceeds derived from the sale of homestead property.

Specifically, the Fund argues that § 522(c), by its express terms, does not extend to

---

[5] The Farr court stated: "Exempt property is property of the estate which a chapter 7 trustee cannot liquidate or distribute to creditors holding allowed claims, because it has been withdrawn from the estate for the benefit of the debtor. See Owen v. Owen, 500 U.S. 305, 308, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991)." 278 B.R. at 177. It added: "In this case, 'property exempted' in § 522(c) means only the $100,000 homestead exemption allowed by California exemption law." Id. It concluded that the creditor could obtain a lien against any equity which was left after senior liens and the $100,000 homestead exemption as its lien.

proceeds of exempt property; that there is no statutory grant of an exemption in proceeds under the Massachusetts Homestead Act; and that there is no common law grant of an exemption in proceeds. Relying upon In re Webber, 278 B.R. 294, 298 (Bankr. D. Mass. 2002)("a homestead 'exemption' in Massachusetts law takes the form of an estate in land and, as estates in land generally do, requires a writing both to acquire and to terminate"); and In re Blair, 125 B.R. 303 (Bankr. D. N.M. 1991), the Fund maintains that, had the Massachusetts legislature intended for proceeds from the voluntary sale of a homestead to constitute an "estate of homestead," it easily could have said so in the statute, which has been amended at least 22 times between 1970 and 2004. The Fund observes that other states, in fact, provide that the proceeds from the sale of an exempt homestead are not subject to seizure for a period of time after sale to permit the acquisition of a new homestead.

With respect to its final argument that no common law grant of an exemption exists, the Fund cites a number of cases involving the transformation of exempt assets other than the estate of homestead for the proposition that once the transformation occurs, the exemption is lost. See, e.g. Hoult v. Hoult, 373 F.3d 47 (1st Cir. 2004); In re Wiesner, 267 B.R. 32 (Bankr. D. Mass. 2001); and In re Toone, 140 B.R. 605 (Bankr. D. Mass. 1992). For example, in Wiesner, the court determined that under Massachusetts law, the debtor's homestead exemption did not remove fire insurance policy insuring the property subject to the homestead from property of estate or preclude creditors from sharing in the insurance proceeds, and trustee's abandonment of the estate's rights in homestead did not

11

constitute an abandonment of estate's rights in the insurance policy or its proceeds.

## IV. DISCUSSION

### A. Violation of the Automatic Stay

The Debtor's arguments with respect to a violation of the automatic stay are devoid of merit, and this Court can readily disposed of them. Section 362(c) governs the duration of the automatic stay. It provides that the stay against property terminates when the property is no longer property of the estate. Because the Chapter 7 Trustee filed a Notice of Abandonment, the Debtor's Property is no longer property of his bankruptcy estate, and thus the Fund did not violate the automatic stay, as opposed to the discharge injunction in seeking to attach the proceeds. Similarly, in a case under Chapter 7, the stay of an action against the Debtor terminates when the Debtor receives his discharge. It is undisputed that the discharge order had entered at the time the Fund commenced its action in the state court.

### B. The Scope of 11 U.S.C. § 522(c)

The parties' dispute centers on whether § 522(c) shields the *proceeds* from the sale of the Debtor's Property, real property which he had exempted on Schedule C, from the Fund's trustee process attachment. In the absence of objection to his claimed homestead exemption, the Debtor successfully *exempted* from property of the estate his interest in his Property to the extent of $300,000 pursuant to Mass. Gen. Laws ch. 188, § 1.[6]

_____

[6] At the time the Debtor filed his petition, § 1 of the Massachusetts Homestead Act provided the following:

Section 522(c) of the Bankruptcy Code, which preempts the exceptions to the Massachusetts Homestead Act, *see* In re Weinstein, 167 F3d 677 (1st Cir. 1999), *cert. denied*, 527 U.S. 1036 (1999), provides in relevant part that "property *exempted* under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case," 11 U.S.C. § 522(c)(emphasis supplied), except for certain debts not present in the instant case. Thus, the Fund, as the holder of a prepetition claim, was

---

An estate of homestead to the extent of $300,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from the laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts or legacies except in the following cases:

(1) sale for taxes;

(2) for a debt contracted prior to the acquisition of said estate of homestead;

(3) for a debt contracted for the purchase of said home;

(4) upon an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly or otherwise for the support of a spouse or minor children;

(5) where buildings on land not owned by the owner of a homestead estate are attached, levied upon or sold for the ground rent of the lot whereon they stand;

(6) upon an execution issued from a court of competent jurisdiction to enforce its judgment based upon fraud, mistake, duress, undue influence or lack of capacity.

Mass. Gen. Laws ch. 188, § 1.

13

precluded from taking any action against the Debtor's estate of homestead to the extent of $300,000, even though this Court has determined that its judgment is nondischargeable. In the unlikely scenario that the Property would have appreciated in value so that the Debtor had equity in the Property over an above the amount of his claimed exemption and any non-avoidable liens, the Fund, as the holder of a nondischargeable debt, could have proceeded to enforce its rights against the Debtor and his Property without violating § 522(c) or the discharge injunction imposed by 11 U.S.C. § 524. *See* In re Farr, 278 B.R. at 177. The Debtor insists that this same logic applies to the proceeds from the sale of the Property.

Several factors confound determination of this issue. These include the Debtor's termination of his homestead by way of a conveyance to avoid a foreclosure sale on August 10, 2005, *see* Mass. Gen. Laws ch. 188, § 7,[7] and the absence of any provision in the Massachusetts Homestead Act that specifically shields proceeds from the sale of homestead property. *See* In re Blair, 125 B.R. 303, 304-05 (Bankr. D. M.M. 1991)(enumerating states

---

[7] Section 7 of the Massachusetts Homestead Act provides the following:

> An estate of homestead created under section two may be terminated during the lifetime of the owner by either of the following methods:--(1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by (2) a release of the estate of homestead, duly signed, sealed and acknowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property is located.

> A deed reserving said estate of homestead shall convey, according to its terms, any title or interest in the property beyond the estate of homestead.

Mass. Gen. Laws ch. 188, §7.

which protect proceeds from the sale of homestead property). Moreover, few courts have addressed the issue raised by the parties in the instant case.

In In re Reed, 184 B.R. 733 (Bankr. W.D. Tex.1995), a case discussed by both the Debtor and the Fund, the Chapter 7 trustee argued "that the postpetition transformation of this otherwise exempt homestead property into proceeds which would have become *nonexempt* under state law during the chapter 11 case must mean that these proceeds then became property of the estate." Id. at 737 (emphasis in original). In rejecting the trustee's argument, the bankruptcy judge observed the following:

> The majority of courts, however, hold that a postpetition change in the character of property properly claimed as exempt will not change the status of that property, relying on the principle that once property is exempt, it is exempt forever and nothing occurring postpetition can change that fact. Peterson, 897 F.2d at 937 (debtor's postpetition death did not cause his homestead exemption to lapse); Payne, 775 F.2d at 204 (insurance proceeds of destroyed exempt property did not become property of the estate); Lasich v. Estate of A.N. Wickstrom (Matter of Wickstrom), 113 B.R. 339, 343-44 (Bankr.W.D.Mich.1990) (debtor's postpetition death did not cause exempt worker's compensation proceeds to lapse); In re Whitman, 106 B.R. 654, 656-57 (Bankr.S.D.Cal.1989) (conversion of homestead to proceeds postpetition does not cause proceeds to become property of the estate); In re Harlan, 32 B.R. 91, 92-93 (Bankr.W.D.Tex.1983) (same). The thrust of these cases is that property which is deemed to be exempt is deemed, as of that point, no longer to be property of the estate, so that its subsequent transformation does not restore it to the estate. See Owen v. Owen, 500 U.S. 305, 307-08, 111 S.Ct. 1833, 1835, 114 L.Ed.2d 350 (1991) ("[a]n exemption is an interest withdrawn from the estate (and hence its creditors) for the benefit of the debtor") (emphasis added).
>
> The conclusion reached by these cases is supported by the language of section 522(c). . . . This provision essentially "immunizes" exempt property against any liability for prepetition debts. Owen, 500 U.S., at 307, 111 S.Ct., at 1835. This immunization continues even after the bankruptcy case is closed. The practical implication is that such property is forever protected from the claims of pre-petition *creditors, and is essentially removed from the*

15

*bankruptcy process. Id.; see* also In re Donaldson, 156 B.R. 51, 53 (Bankr.N.D.Cal.1989).

No change in the form or character of the exempt property should change this result. Nothing in section 522(c) even vaguely suggests that, as a precondition to enjoying the protections of that provision, the debtor must maintain the exempt character of the property. If the debtor decides, as part of his fresh start, to sell the house, buy a Winnebago, and travel around the country from campground to campground with his wife and his dog, the statute appears to place no impediment in his path. True enough, the Winnebago may not be exempt from obligations he incurs after his discharge (depending on state law), but it should not be vulnerable to the satisfaction of any of the debtor's prepetition obligations. Were the rule otherwise, then estates could be reopened to administer such proceeds at virtually any time, robbing bankruptcy administration of any sort of meaningful finality, and robbing the bankruptcy discharge of its efficacy.

We join the majority of courts that have ruled on this issue, concluding that a postpetition transformation of exempt property into a form of property which would not be exempt under state law does not return the property to the estate.

184 B.R. at 737-38 (footnote omitted).

In a footnote, the court added:

It is important to note here that the court is not holding that the proceeds of the disposition of exempt property are therefore also "exempt." When a debtor claims exemptions under state law, only state law controls whether a given property is "exempt." Our holding is only that, under bankruptcy law, if a given property owned by the debtor as of the filing is deemed to be exempt, the property is removed from the estate. It is no longer property of the estate. *The conversion of that property into some other form which, under applicable law, would not be exempt will not restore the property to the estate, but that is not the same as saying the property as transmogrified is still exempt.*

Id. at 738 n. 7.

Pursuant to the reasoning in Reed, which this Court accepts, the net proceeds from the sale of the Debtor's sale of the Property are not transformed into property of the estate

16

and subject to distribution by the Trustee. In other words, once property is exempted from property of the estate, it does not come back into the estate if it is no longer exempt under state law. The question remains, however, as to the effect of the Debtor's voluntary conveyance of his Property, because clearly the conveyance of his Property had the effect of terminating the homestead.[8]

This Court need not decide this difficult issue, however, because, arguably, the restitution order, which entered postpetition, created an obligation on the part of the Debtor to the United States unaffected by § 522(c). In other words, prior to the commencement of the Debtor's Chapter 7 case, there was no "debt ... for a fine, penalty or forfeiture" within the meaning of 11 U.S.C. § 523(a)(7) owed to the United States that could be affected by § 522(c).

C. The Restitution Order

According to the court in U.S. v. Dickerson, 370 F.3d 1330 (11th Cir. 2004), cert. denied, 125 S.Ct. 343 (2004), "[a] federal district court has "no inherent authority to order restitution, and may do so only as explicitly empowered by statute. United States v. Hensley, 91 F.3d 274, 276 (1st Cir.1996)." 370 F.3d at 1335. The Mandatory Victims Restitution Act of 1996 (the "MVRA"), Pub.L. No. 104-132, 110 Stat. 1227, codified at 18 U.S.C. § 3663A, provides such authority. "The MVRA obligates district courts to order

---

[8] The Court observes that in numerous instances where the conveyance is involuntary, such as a trustee's sale or a foreclosure sale by a mortgagee, the debtor receives the benefit of the claimed exemption. See Makoroff v. Buick (In re Buick), 237 B.R. 607 (Bankr. W.D. Pa. 1999), In re Bedell, 173 B.R. 463 (Bankr. W.D. N.Y. 1994), and Kaufman v. Balaber-Strauss (In re Kaufman), 68 B.R. 391 (Bankr. S.D. N.Y. 1986).

restitution in certain cases, including wire fraud. Section 3664 sets forth the procedures for ordering restitution. It demands that courts 'order restitution to each victim in the full amount of each victim's losses . . . and without consideration of the economic circumstances of the defendant.' 18 U.S.C. § 3664(f)(1)(A)." Id. at 1336 (footnotes omitted). The MVRA also provides in relevant part the following:

> (m)(1)(A)(i) An order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or
>      (ii) by all other available and reasonable means.
>      (B) At the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order. Upon registering, recording, docketing, or indexing such abstract in accordance with the rules and requirements relating to judgments of the court of the State where the district is located, the abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State.

18 U.S.C. § 3664(m). *See also* 18 U.S.C. § 3613 ("In accordance with section 3664(m)(1)(A) of this title, all provisions of this section are available to the United States for the enforcement of an order of restitution").

Section 3613(a) provides that the United States may enforce a judgment imposing a fine or order of restitution "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." The judgment may be enforced against all property or rights to property except property exempt from levy for taxes pursuant to 26 U.S.C. § 6334(a)(1)-(8) and (10). Notably, the enumeration of exempt property does not include a debtor's residence or proceeds from its sale.

18

In view of these provisions governing orders of restitution, this Court shall defer any ruling on the Debtor's Motion until such time as the district court determines whether to enforce its post-judgment garnishment order with respect to the proceeds of the sale of the Debtor's Property. If the district court were to determine that the restitution order is a postpetition order unaffected by 11 U.S.C. § 522(c) and that the United States may enforce that order for the benefit of the Fund by garnishing the proceeds from the sale of the Debtor's residence, in effect rejecting the Debtor's Claim for Exemption filed in his criminal case, any ruling on the Debtor's Motion filed in this case would be moot.

## V. CONCLUSION

Upon consideration of the foregoing, the Court shall take no action on the Debtor's Motion until such time as the United States District Court for the District of Massachusetts determines whether or not the postpetition restitution order entered as part of Debtor's sentence following a criminal conviction for mail fraud creates an entirely new obligation owed to United States unaffected by the Debtor's homestead exemption and 11 U.S.C. § 522(c), or whether the enforcement mechanisms for restitution orders set forth in 18 U.S.C. §§ 3613 and 3664 preempt the Massachusetts Homestead Act.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: September 26, 2005
cc: Kathleen A. Rahbany, Esq., William R. Moorman, Jr., Esq., Leonard Frisoli, Esq.

19