# EXHIBIT A



# FRISOLI & ASSOCIATES
### ATTORNEYS AT LAW
### 43 THORNDIKE STREET
### BULFINCH SQUARE
### CAMBRIDGE, MA 02141

LEONARD M. FRISOLI, JR.
JOSEPH W. McDERMOTT
LEONARD A. FRISOLI

TELEPHONE: (617) 494-0200
FACSIMILE: (617) 494-9068

VIA FACSIMILE ONLY      617-742-1788      19 Pages

William R. Moorman, Jr., Esq.
Craig and Macauley, P.C.
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210

August 25, 2005

RE: Phil Hyde

Dear Bill:

Attached is a copy of the HUD and the P&S which contains the escrow clause contained in paragraph 46, which releases the escrow to the buyers, so that they may evict Hyde.

While I do not believe that the escrow is covered under the TRO or the Trustee Process, I don't feel like going to the court for an opinion. Accordingly, what Andy Bram is requesting, is permission to disburse $10K to Hyde, which covers moving expenses, and three months rent. The $5k balance will go into the monies Bram is holding pursuant to the TRO, since they will be Phil's, if he vacates the house.

Let me know how you want to handle it. Andy Bram is holding approximately $121,895.00 under the TRO. The expenses after the closing, disbursed on 8/11/05, are as follows:

-$10,000 unsecured loan to Barney Brawer (rich uncle);
-$600 Broker reimbursements;
-$15,928 Legal fee to Frisoli Associates, P.C.;
-$4,550 Legal fee to Bicknell & Smith;
-$3,000 under payment of Weitzman mortgage.

Please feel free to contact me if you have any questions.

Sincerely,

Leonard A. Frisoli

OMB NO. 2502-0265

**A.**
U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT

# SETTLEMENT STATEMENT

**B. TYPE OF LOAN:**
1. ☐ FHA  2. ☐ FmHA  3. ☒ CONV. UNINS.  4. ☐ VA  5. ☐ CONV. INS.
6. FILE NUMBER: MCDONALD J-0505130
7. LOAN NUMBER: 0030487492
8. MORTGAGE INS CASE NUMBER:

**C. NOTE:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "[POC]" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.
1.0  3/86   (MCDONALD J-0505130.PFD/MCDONALD J-0505130/14)

| D. NAME AND ADDRESS OF BORROWER: | E. NAME AND ADDRESS OF SELLER: | F. NAME AND ADDRESS OF LENDER: |
|---|---|---|
| J. Cooper McDonald and Timothy J. Dransfield 3 Arnold Court Somerville, MA 02143 | Phillip W. Hyde 26 Union Street Cambridge, MA 02141 | ERA Mortgage 3000 Leadenhall Road Mount Laurel, NJ 08054 |

| G. PROPERTY LOCATION: | H. SETTLEMENT AGENT: | I. SETTLEMENT DATE: |
|---|---|---|
| 26 Union Street Cambridge, MA 02139 Middlesex County, Massachusetts | Law offices of Anthony A. Senerchia Sr, PC  PLACE OF SETTLEMENT 565 Wilbur Avenue Swansea, MA 02777 | August 10, 2005 |

| J. SUMMARY OF BORROWER'S TRANSACTION | | K. SUMMARY OF SELLER'S TRANSACTION | |
|---|---|---|---|
| **100. GROSS AMOUNT DUE FROM BORROWER:** | | **400. GROSS AMOUNT DUE TO SELLER:** | |
| 101. Contract Sales Price | 575,000.00 | 401. Contract Sales Price | 575,000.00 |
| 102. Personal Property | | 402. Personal Property | |
| 103. Settlement Charges to Borrower (Line 1400) | 7,789.38 | 403. | |
| 104. | | 404. | |
| 105. | | 405. | |
| *Adjustments For Items Paid By Seller in advance* | | *Adjustments For Items Paid By Seller in advance* | |
| 106. City/Town Taxes         to | | 406. City/Town Taxes        to | |
| 107. County Taxes             to | | 407. County Taxes            to | |
| 108. Assessments              to | | 408. Assessments             to | |
| 109. | | 409. | |
| 110. | | 410. | |
| 111. | | 411. | |
| 112. | | 412. | |
| **120. GROSS AMOUNT DUE FROM BORROWER** | 582,789.38 | **420. GROSS AMOUNT DUE TO SELLER** | 575,000.00 |
| **200. AMOUNTS PAID BY OR IN BEHALF OF BORROWER:** | | **500. REDUCTIONS IN AMOUNT DUE TO SELLER:** | |
| 201. Deposit or earnest money | 28,700.00 | 501. Excess Deposit (See Instructions) | |
| 202. Principal Amount of New Loan(s) | 460,000.00 | 502. Settlement Charges to Seller (Line 1400) | 3,262.00 |
| 203. Existing loan(s) taken subject to | | 503. Existing loan(s) taken subject to | |
| 204. | | 504. Payoff of first Mortgage to Harmon Law Offices/011 | 172,298.72 |
| 205. | | 505. Payoff of second Mortgage to Steven A. Ross, Attor | 160,682.99 |
| 206. | | 506. Deposit retained by broker | 28,700.00 |
| 207. | | 507. Lien Payoff to Donald C. Weitzman & Lewis Lloyd | 5,000.00 |
| 208. | | 508. | |
| 209. | | 509. | |
| *Adjustments For Items Unpaid By Seller* | | *Adjustments For Items Unpaid By Seller* | |
| 210. City/Town Taxes  07/01/05 to 08/11/05 | 162.97 | 510. City/Town Taxes  07/01/05 to 08/11/05 | 162.97 |
| 211. County Taxes              to | | 511. County Taxes            to | |
| 212. Assessments               to | | 512. Assessments             to | |
| 213. | | 513. | |
| 214. | | 514. | |
| 215. | | 515. | |
| 216. | | 516. See addit'l disb. exhibit | 18,315.12 |
| 217. | | 517. Lien Payoff to Silverman & Kudisch, P.C. | 30,179.69 |
| 218. | | 518. Home Warranty to Aon Home Warranty | 399.00 |
| 219. | | 519. | |
| **220. TOTAL PAID BY/FOR BORROWER** | 488,862.97 | **520. TOTAL REDUCTION AMOUNT DUE SELLER** | 419,000.49 |
| **300. CASH AT SETTLEMENT FROM/TO BORROWER:** | | **600. CASH AT SETTLEMENT TO/FROM SELLER:** | |
| 301. Gross Amount Due From Borrower (Line 120) | 582,789.38 | 601. Gross Amount Due To Seller (Line 420) | 575,000.00 |
| 302. Less Amount Paid By/For Borrower (Line 220) | (488,862.97) | 602. Less Reductions Due Seller (Line 520) | (419,000.49) |
| **303. CASH (X FROM) (TO) BORROWER** | 93,926.41 | **603. CASH (X TO) (FROM) SELLER** | 155,999.51 |

| L. SETTLEMENT CHARGES | | | | PAID FROM BORROWER'S FUNDS AT SETTLEMENT | PAID FROM SELLER'S FUNDS AT SETTLEMENT |
|---|---|---|---|---|---|
| 700. TOTAL COMMISSION Based on Price | $ 575,000.00 @ 5.0000 % | 28,750.00 | | | |
| Division of Commission (line 700) as Follows: | | Less Deposit Retained | 28,700.00 | | |
| 701. $ 28,750.00 to Coldwell Banker | | | | | |
| 702. $ to | | | | | 50.00 |
| 703. Commission Paid at Settlement | | | | | |
| 704. | to | | | | |
| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | | | |
| 801. Loan Origination Fee  % | to | | | | |
| 802. Loan Discount  % | to | | | | |
| 803. Appraisal Fee | to | | | 4.20 | |
| 804. Credit Report | to CBC Systems | | | | |
| 805. Lender's Inspection Fee | to | | | 19.50 | |
| 806. Flood Cert Fee | to STARS | | | 85.00 | |
| 807. Tax Service Fee | to First Ameican Tax Service | | | 500.00 | |
| 808. Processing Fee | to ERA Mortgage | | | | |
| 809. | | | | | |
| 810. | | | | | |
| 811. | | | | | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | 1,709.18 | |
| 901. Interest From 08/10/05 to 09/01/05 @ $ 77.690000/day ( 22 days %) | | | | | |
| 902. Mortgage Insurance Premium for months to | | | | | |
| 903. Hazard Insurance Premium for 1.0 years to | | | | | |
| 904. | | | | | |
| 905. | | | | | |
| 1000. RESERVES DEPOSITED WITH LENDER | | | | | |
| 1001. Hazard Insurance | months @ $ | per month | | | |
| 1002. Mortgage Insurance | months @ $ | per month | | 966.00 | |
| 1003. City/Town Taxes | 7.000 months @ $ | 138.00 per month | | | |
| 1004. County Taxes | months @ $ | per month | | | |
| 1005. Assessments | months @ $ | per month | | | |
| 1006. | months @ $ | per month | | | |
| 1007. | months @ $ | per month | | | |
| 1008. | months @ $ | per month | | | |
| 1100. TITLE CHARGES | | | | 600.00 | |
| 1101. Settlement or Closing Fee | to Law offices of Anthony A. Senerchia Sr. PC | | | 200.00 | |
| 1102. Title Review Fee | to Law offices of Anthony A. Senerchia Sr. PC | | | 200.00 | |
| 1103. Title Examination | to Apex Real Estate Information Services | | | | |
| 1104. Title Insurance Binder | to | | | | |
| 1105. Document Preparation | to | | | | |
| 1106. Notary Fees | to Law offices of Anthony A. Senerchia Sr. PC | | | 750.00 | |
| 1107. Buyers Attorney's Fees | to Rumary & Smith | | | | |
| (includes above item numbers: | . | ) | | 2,187.50 | |
| 1108. Title Insurance | to APEX Real Estate Information Services, LLP | | | | |
| (includes above item numbers: | | ) | | | |
| 1109. Lender's Coverage | $ | | | | |
| 1110. Owner's Coverage | $ | | | 25.00 | |
| 1111. Obtain MLC | to Law offices of Anthony A. Senerchia Sr. PC | | | | 75.00 |
| 1112. Record Lien Release | to Law offices of Anthony A. Senerchia Sr. PC | | | | 75.00 |
| 1113. Record POA | to Law offices of Anthony A. Senerchia Sr. PC | | | | |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | Releases $ 225.00 | | 302.00 | 225.00 |
| 1201. Recording Fees: Deed $ 126.00; Mortgage $ 176.00; | | | | | 2,622.00 |
| 1202. City/County Tax/Stamps: Deed | 2,622.00; Mortgage | | | | |
| 1203. State Tax/Stamps: Deed | ; Mortgage | | | 66.00 | |
| 1204. Record MLC | to Register of Deeds | | | 50.00 | |
| 1205. Rundown/Record Service Fee | to Law offices of Anthony A. Senerchia Sr. PC | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | | | |
| 1301. Survey | to | | | | |
| 1302. Pest Inspection | to | | | 75.00 | 75.00 |
| 1303. Courier Fees | to Law offices of Anthony A. Senerchia | | | 50.00 | |
| 1304. Wire Fees | to Law offices of Anthony A. Senerchia Sr. PC | | | | 140.00 |
| 1305. Discharge Tracking Fee | to SMS | | | | |
| 1400. TOTAL SETTLEMENT CHARGES (Enter on Lines 103, Section J and 502, Section K) | | | | 7,789.38 | 3,262.00 |

Certified to be a true copy.

## ADDITIONAL DISBURSEMENTS EXHIBIT

**Borrower:** J.Cooper McDonald and Timothy J.Dransfield
**Seller:** Philip W.Hyde, by his Attorney in Fact
**Lender:** ERA Mortgage
**Settlement Agent:** Law offices of Anthony A. Senerchia Sr. PC
(508)646-9030
**Place of Settlement:** 566 Wilbur Avenue
Swansea, MA 02777
**Settlement Date:** August 10, 2005
**Property Location:** 26 Union Street
Cambridge, MA 02139
Middlesex County, Massachusetts

| PAYEE/DESCRIPTION | NOTE/REF NO | BORROWER | SELLER |
|---|---|---|---|
| Rumery & Smith<br>Use and Occupation | | | 2,100.00 |
| Bicknell & Smith<br>Escrow Holdback | | | 15,000.00 |
| City of Cambridge<br>Final Water/Sewer Due | | | 883.94 |
| Flavio Cesar<br>Magic Carpet Cleaning | | | 145.00 |
| Walkers and More Painting & Home Improvement<br>Install Smoke Det | | | 80.00 |
| Carole Bellew<br>Reimbursement Smoke Alarm | | | 81.18 |
| Carole Bellew<br>Reimbursement Smoke Cert | | | 25.00 |
| **Total Additional Disbursements shown on Line 112/516** | | **$ 0.00** | **$ 18,315.12** |

06/03/05  16:01  FAX                                                                    ⌀02
05/13/2005 16:48 FAX 6174948668                                                         ⌀002

**STANDARD FORM**  
**PURCHASE AND SALE**

*From the office of:*  
*BICKNELL & SMITH*  
*43 Thorndike Street*  
*Cambridge, MA 02141*

This 3rd day of June, 2005

1. **PARTIES AND MAILING ADDRESSES**
   Phillip Hyde of 26 Union Street, Cambridge, Massachusetts 02139
   hereinafter called the SELLER, agrees to SELL and
   J. Cooper McDonald and Timothy Dransfield, both of 3 Arnold Ct.,
   Somerville, Massachusetts 02143
   hereinafter called the BUYER, agrees to BUY,
   upon the terms hereinafter set forth, the following described premises:
   26 Union Street, Cambridge, Massachusetts 02139

2. **DESCRIPTION**
   The land with the building(s) thereon located at, 26 Union Street, Cambridge, MA
   as more particularly described in a deed to Lynne Sussman dated August 31, 1990
   and recorded with the Middlesex (South District) Registry of Deeds in Book
   20747, Page 557 and also see Middlesex Probate Court Docket No. 99P5293EP.

3. **BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES**
   INCLUDED in the sale as part of said premises are the buildings, structures, and
   improvements now thereon, and the fixtures ~~belonging to the SELLER and~~ used
   in connection therewith including, if any, all wall-to-wall carpeting, drapery rods,
   automatic garage door openers, venetian blinds, window shades, screens, screen
   doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating
   equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto,
   hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric
   and other lighting fixtures, mantel, outside television antennas, fences, gates,
   trees, shrubs, plants and, ONLY IF BUILT IN, ~~refrigerators~~, air conditioning
   equipment, ventilator, dishwasher, ~~washing machine and dryer~~; and;
   But excluding: Nothing _refrigerator, washing machine and dryer_

4. **TITLE DEED**
   Said premises are to be conveyed by a good and sufficient quitclaim deed running
   to the BUYER, or to the nominee designated by the BUYER by written notice to
   the SELLER at least seven (7) days before the deed is to be delivered as herein
   provided, and said deed shall convey a good and clear record and marketable title
   thereto, free from encumbrances, except

   (a) Provisions of existing building and zoning laws;
   (b) Existing rights and obligations in party walls which are not the subject of
       written agreement;

08/03/05  16:01  FAX                                                        ☒003
05/13/2005 16:48 FAX 6174948668                                             ☒003

(c) Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;

(d) Any liens for municipal betterments assessed after the date of this agreement;

(e) Easements, restrictions and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said premises. as a single-family dwelling

Any title matter or matter of practice arising under or relating to this agreement which is the subject of a title or practice standard respectively of the Real Estate Bar Association, formerly known as the Massachusetts Conveyancers Association shall be governed by such standard to the extent applicable.

5. **PLANS**
If said deed refers to a plan necessary to be recorded therewith, the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. **REGISTERED LAND**
In addition to the foregoing, if title to said premises is registered, said deed shall be in form sufficient to entitle BUYER to a Certificate of Title of said premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

7. **PURCHASE PRICE**
The agreed purchase price for said premises is **Five hundred seventy-five thousand ($575,000.00) dollars**, of which

| | |
|---|---|
| $ 26,700.00 | have been paid as a deposit this day and |
| $  2,000.00 | were previously paid with the offer to purchase |
| $546,300.00 | are to be paid at the time of delivery of the deed in cash, or by certified, cashiers, treasurer's, or bank check(s), *or conveyancing attorney's IOLTA check* |
| $_____ | |
| $575,000.00 | TOTAL |

8. **TIME OF PERFORMANCE; DELIVERY OF DEED**
Such deed is to be delivered at 12 o'clock Noon on the 10th day of August, 2005 at the Registry of Deeds, *or at the Office of Buyer's Lender's Counsel*, unless otherwise agreed upon in writing. It is agreed that time is of the essence of this contract.

9. **POSSESSION AND CONDITION OF PREMISES**
Full possession of said premises free of all tenants and occupants, except as herein provided, is to be delivered at the time of the delivery of the deed, said premises to be then (a) in the same condition as they are now, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in clause 4 hereof.

06/03/05 16:01 FAX                                                        ☒04
05/13/2005 16:49 FAX 6174948668                                           ☒004

The BUYER shall be entitled personally to inspect said premises prior to deliver of the deed in order to determine whether the condition thereof complies with the terms of this clause.

10. **EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM**
    If the SELLER shall be unable to give title or to make conveyance, or to deliver possession of the premises, all as herein stipulated, or if at the time of the delivery of the deed, the premises do not conform with the provisions hereof, then the Seller shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the time for performance hereof shall be extended for a period of thirty (30) days, *or such other time period co-terminus with the expiration date of Buyer's mortgage commitment, or rate-lock whichever first occurs, provided, however, that the Seller shall not be required to expend more than $2,500.00, including attorneys' fees, in order to satisfy this provision*, exclusive of mortgage pay-offs and monetary liens.

11. **FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM**
    If at the expiration of the extended time the SELLER shall have failed to so remove any defects in title, deliver possession, or to make the premises conform, as the case may be, all as herein agreed, or if at any time during the period of this agreement or any extension thereof, the holder of a mortgage on said premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this agreement shall be void without recourse to the parties hereto.

12. **BUYER'S ELECTION TO ACCEPT TITLE**
    The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this clause, if the said premises shall have been damaged by fire or casualty insured against, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either (a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or (b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.

08/03/05 16:01 FAX                                                                    ☒05
08/13/2005 16:50 FAX 6174848668                                                       ☒005

13. **ACCEPTANCE OF DEED**
    The acceptance of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except as such are, by the terms thereof, to be performed after the delivery of said deed.

14. **USE OF MONEY TO CLEAR TITLE**
    To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of said deed, *or arrangements in accordance with customary conveyancing practice in the Boston area have been made for subsequent delivery and recording*.

15. **INSURANCE**
    Until the delivery of the deed, the SELLER shall maintain insurance on said premises as follows:

    | *Type of Insurance* | *Amount of Coverage* |
    |---|---|
    | (a) *Fire and Extended Coverage* | *$As Presently Insured* |

    *All risk of loss to remain with the Seller until the deed is recorded*

16. **ADJUSTMENTS**
    ~~Collected rents,~~ water, and sewer use charges, and taxes for the then current fiscal year shall be apportioned, and fuel value, if applicable, shall be adjusted, as of the day of performance of this agreement and the net amount thereof shall be added or deducted from, as the case may be, the purchase price payable by the BUYER at the time of the delivery of the deed. ~~Uncollected rents for the current rental period shall be apportioned if and when collected by either party.~~

17. **REAPPORTIONMENT/ABATEMENT**
    If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and if the taxes which are to be reapportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the parties, provided that neither party shall be obliged to institute or prosecute proceedings for an abatement unless herein otherwise agreed.

18. **BROKER'S FEE**
    A Broker's fee for professional services of *five (5%) percent* is due from SELLER to *Coldwell banker residential Brokerage, Huron Ave, Cambridge and* ERA *the Norton Group, to be divided evenly between the two* in accordance with a prior brokerage agreement between SELLER and Brokers which governs the

relationship between said parties, but such commission shall be paid only if, as, and when the Buyer accepts and records the deed from SELLER, and SELLER receives the full consideration thereof, and not otherwise regardless of reason.

19. **BROKER(s) WARRANTY**
The Brokers named herein and their individual agents warrant that they are duly licensed as such by the Commonwealth of Massachusetts.

20. **DEPOSIT**
All deposits made hereunder shall be held in escrow by *Coldwell Banker Residential Brokerage* as escrow agent subject to the terms of this agreement and shall be duly accounted for at the time for performance of this agreement. In the event of any disagreement between the parties, the escrow agent shall retain all deposits made under this agreement pending instructions mutually given by the SELLER and BUYER. *Deposit to be held at interest to be ~~mutually~~ paid to · Buyer at closing or to follow deposit if no closing occurs.* or pursuant to Court order

21. **BUYER'S DEFAULT; DAMAGES**
If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder shall be retained by the SELLER as liquidated damages *and this shall be Seller's sole and exclusive legal and/or equitable remedy for any default by Buyer under this agreement. Buyer acknowledges that the amount of the deposit is an agreed best estimate by the parties of the damages to Seller for default by Buyer, and Seller's retention of such deposit in the event of Buyer's default is not to be legally construed as a penalty, but rather a concession for Seller's waiver of Seller's right to pursue specific performance of this contract.*

22. **RELEASE BY HUSBAND OR WIFE**
The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said premises.

23. **BROKER AS PARTY**
The Brokers named herein join in this agreement and become a party hereto, insofar as any provisions of this agreement expressly apply to the Brokers, and to any amendments or modifications of such provisions to which the Brokers agree in writing.

24. **LIABILITY OF TRUSTEE, SHAREHOLDER BENEFICIARY, etc.**
If the SELLER or BUYER executes this agreement in a representative or fiduciary capacity, only, the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied hereunder.

06/03/05  16:01  FAX                                                                    ☒ 07
05/13/2005 16:51 FAX 6174946668                                                      ☒ 007

25. **WARRANTIES AND REPRESENTATIONS**
The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): NONE

26. **MORTGAGE CONTINGENCY CLAUSE**
In order to help finance the acquisition of said premises, the BUYER shall apply for a conventional bank or other institutional mortgage loan of $460,000.00 at prevailing rates, terms and conditions. If despite the BUYER's diligent efforts a commitment for such loan cannot be obtained on or before July 6, 2005 BUYER may terminate this agreement by written notice to the SELLER prior to the expiration of such time, whereupon any payments made under this agreement shall be forthwith refunded and all other obligations of the parties hereto shall cease and this instrument shall be void without recourse to the parties hereto. In no event will the BUYER be deemed to have used diligent efforts to obtain such commitment unless the BUYER submits a complete mortgage application conforming to the foregoing provisions on or before June 8, 2005. *Good Faith prosecution of one mortgage application to an institutional lender generally making loans of the type herein sought shall be deemed to comply with the "diligent efforts" requirement hereof.*   ● substantially

27. **CONSTRUCTION OF AGREEMENT**
This instrument, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the parties, is binding upon and enures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors, and assigns, and may be cancelled, modified, or amended only by written instrument executed by both the SELLER and the BUYER. If two or more persons are named herein as BUYER, their obligations hereunder shall be joint and several. The captions are used only as a matter of convenience and are not to be considered a part of this agreement or to be used in determining the intent of the parties to it.

28. **LEAD PAINT LAW**
The parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster, or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age.

29. **SMOKE DETECTORS**
The SELLER shall, at the time of the delivery of the deed, deliver a certificate from the fire department of the city or town in which said premises are located

06/03/05 16:01 FAX                                                                      ☒005
05/13/2005 16:52 FAX 6174948868                                                         ☒008

stating that the premises have been equipped with approved smoke detectors in conformity with applicable law.

30. **ADDITIONAL PROVISIONS**
The initialed riders, if any, attached hereto, are incorporated herein by reference.
SEE RIDER "A" ~~ATTACHED~~ and "Rider B" attached.

FOR RESIDENTAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALSO HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

NOTICE: This is a legal document that creates binding obligations. If not understood consult an attorney.

_____          _____
SELLER                                    BUYER

                                         _____
                                          BUYER

_____          _____
BROKER                                    BROKER

06/03/05 16:01 FAX                                                                          ⌀09
05/13/2005 16:52 FAX 6174948668                                                              ⌀008

### RIDER A TO PURCHASE AND SALE AGREEMENT DATED ~~MAY 18,~~ June 3, 2005 BETWEEN PHILLIP HYDE (SELLER), AND J. COOPER MCDONALD & TIMOTHY DRANSFIELD (BUYER), FOR THE PREMISES LOCATED AT 26 UNION STREET, CAMBRIDGE, MASSACHUSETTS

31. Buyer acknowledges having a satisfactory "home inspection" of the premises by consultants of Buyer's choice, and therefore agrees to accept conveyance of the premises in its present condition, on an "AS IS" basis, without any warranties either express or implied by Seller as to the condition thereof, and without any responsibility or liability on the Seller's part after delivery of the deed.

32. Without limitation, said premises shall not be considered to be in compliance with the provisions of this Agreement with respect to title unless:

    (a) All structures and improvements, including, but not limited to driveway, parking area, garage and septic system, and all means of access to said premises shall not encroach upon or under any property not within such lot lines;

    (b) Said premises abut a public way, duly laid out or accepted as such by the municipality in which said premises are located;

    (c) No building, structure, improvement, or property of any kind encroaches upon or under said premises from other premises;

    (d) There are no underground oil tanks on premises; and

    (e) The premises are served by municipal sewer.

33. Buyer's performance hereunder is conditioned upon title to the premises being insurable on a standard ALTA form owner's policy currently promulgated by companies licensed to do business in the Commonwealth of Massachusetts at normal premium rates and without exception for any matters not expressly permitted hereunder.

34. The Seller shall deliver the premises in "broom-clean" condition at the time of delivery of the Seller's Deed or the time Buyer takes possession whichever first occurs. "Broom-clean" shall include, but not be limited to, removal of all of the Seller's possessions therefrom not being sold to the Buyer and removal of all materials being discarded by Seller.

35. At the time for delivery of the deed all appliances included with the premises will be in the same operating condition as at the time of Buyer's inspection.

36. Buyer represents and warrants that Buyer has been informed of the provisions of M.G.L. c. 111, section 197A, has been given the disclosures required thereunder,

has executed the "Property Transfer Notification Certification" issued in conjunction therewith and has waived the right to a "lead-paint" inspection.

37. Seller represents that to the best of his knowledge the premises have not been insulated with Urea Formaldehyde Foam Insulation (UFFI).

38. From and after the date of execution of the agreement by Seller, Buyer may have the right of access to the premises for the purposes of inspections, bank appraisals, making measurements and obtaining contractor's estimates. All such visits shall be made only after reasonable advance notice to the Seller, and only in the presence of Seller or Seller's designated agents. Buyer shall indemnify Seller and hold Seller harmless from all actions, suits, claims, liabilities, losses, damages, and costs, including reasonable attorney's fees, arising from (a) personal injury suffered by Buyer, Buyer's mortgage lender, and their agents, on or about the premises, or (b) property damage to the premises caused by such entries, provided same is not due to negligent acts or omission of the Seller or Seller's agents.

39. The Seller hereby agrees to sign and deliver, at the time of performance, such affidavits, documents and certificates as are customarily required in transactions of this type. Without limiting the generality hereof, such documents may include: Title Insurance Affidavits, Clerical Error Compliance Affidavits, Re-apportionment/Reimbursement Agreements, I.R.C. Reporting Affidavits/Forms, HUD-1 Settlement Statements, FIRPTA Affidavit, UFFI Warranties and Smoke Detector Compliance Certifications.

40. Seller hereby authorizes the conveyancing attorney to obtain payoff information from Seller's mortgagee(s) or any other security holder(s) listed below and in connection therewith hereby authorizes any equity mortgage lender to freeze the equity account.

The Seller hereby authorizes the mortgagee(s), upon receipt of the payoff funds, to close the account and forward a discharge of the mortgage in accordance with the instructions provided with the payoff check.

|  | 1ST MORTGAGE | 2ND MORTGAGE | OTHER |
|---|---|---|---|
| Name of Institution: | | | |
| Address: | | | |
| Telephone Number: | | | |
| Loan Number: | | | |
| Seller Signature | *[signature]* | | |

41. If any errors or omissions are found to have occurred in any calculations or figures used in the Settlement Statement signed by the parties at the closing (or would have been included if not for such error or omission) and notice thereof is given within three (3) months of the date of delivery of the deed to the party to be charged, then such party agrees promptly to make a payment to correct the error or omission. The parties hereto also agree to execute and deliver to the requesting party whatever additional documents or amendments to existing documents are reasonably required to effectuate the purchase and sale under this agreement provided such additional documents or amendments are prepared by the requesting party, and do not in any way adversely affect, or otherwise enlarge the liability of any of the parties relative to said purchase and sale. This paragraph shall survive the closing for a period of three (3) months.

42. Any notice, demand or other communication required or permitted under this Agreement shall be deemed sufficient if delivered or mailed postage prepaid by certified mail, return receipt requested, or sent by facsimile with confirmation of transmission, addressed either to the parties at the addresses given in paragraph 1 above or to their attorneys hereinafter specified. Notice shall be deemed to have been given effective upon the delivery or upon the placing of the notice into the mails (as reflected by the date endorsed on the certified mail receipt provided same is a post-office endorsement thereof and not one affixed by Sender) or if sent via facsimile, when transmitted, as evidenced by a transmission report containing a remote statement identification and confirmation of the time of such transmission and the pages sent, unless "receipt" by a date certain is otherwise specified in a particular provision of this agreement.

Seller's Attorney:                          Buyer's Attorney:
Andrew E. Bram                              Edwin J. Smith
Bicknell & Smith                            Rumery & Smith
43 Thorndike Street                         403 Highland Avenue
Cambridge, MA 02141                         Somerville, MA 02144
Tel-617-494-9400                            Tel-617-625-2244
Fax-617-494-8668                            Fax-617-625-4350

43. Buyer represents to the Seller that Buyer's performance hereunder is not contingent upon the sale of any other real property.

44. Seller agrees to purchase a one (1) year "Basic Coverage" ERA Home Protection Plan warranty for the Buyer at closing at a cost to Seller not to exceed $399.00. Buyer, at Buyer's sole expense, may upgrade or add to the basic coverage within thirty (30) days of closing.

45. Seller and Buyer agree that Buyer may hold over at the premises through ~~July 7,~~ August 30 2005 at a cost of $100.00 per day to be paid by Seller to Buyer. Buyer and Seller further agree to sign a usual and customary "Use and Occupancy Agreement" at closing ~~in the form attached hereto~~ on the terms set forth in Rider B, paragraph 46.

06/03/05 16:01 FAX                                                                 ☒012
05/13/2005 16:54 FAX 6174948868                                                    ☒012

46. ~~At closing Seller shall escrow $1,500.00 to be held by Buyer's attorney, to cover monies owed by Seller to Buyer for Seller's use and occupancy. Seller shall be entitled to receive any unused portion of the escrow upon Seller's vacancy of the premises.~~

_____
Seller

_____
Buyer

_____
Buyer

06/03/05 16:01 FAX



RIDER B TO PURCHASE AND SALE AGREEMENT, DATED JUNE 3, 2005, BETWEEN PHILLIP HYDE, AS SELLER, AND J. COOPER MCDONALD AND TIMOTHY DRANSFIELD, AS BUYER, FOR PROPERTY AT 26 UNION STREET, CAMBRIDGE, MASSACHUSETTS

The following provisions supplement the Purchase and Sale Agreement identified above, and are included within said Agreement for all purposes and shall prevail if inconsistent with any provisions of the form Purchase and Sale Agreement.

46. USE AND OCCUPATION

A) Seller and Seller's son may use and occupy the premises up to and including 8:00 P.M. on August 30, 2005, and no longer. Time shall be of the essence of such occupancy. Seller hereby covenants to Buyer that he will be responsible to the Buyer for any and all loss or damage which may be occasioned by the breach hereof by Seller or Seller's son.

B) No relationship of Landlord and Tenant shall arise between Buyer and Seller and/or Seller's son as a result of the use and occupation of the premises by Seller and/or Seller's son after the closing.

C) Seller and Seller's son shall not cause any injury or damage to the premises and Seller shall be liable to Buyer for any such injury or damage which Seller and/or Seller's son causes.

D) For each day Seller and/or Seller's son uses and occupies the premises commencing with the date of the closing up to and including the date that Seller vacates the premises, but in no event later than August 30, 2005, Seller shall pay Buyer a per diem charge of $100.00.

E) In the event that Seller and/or Seller's son fails to deliver up full possession of the premises no later than 8:00 PM on August 30, 2005, Seller shall be obligated to pay the Buyer a per diem charge twice the amount set forth in subparagraph D above for each day that Seller and/or Seller's son uses and occupies the premises after 8:00 P.M. on August 30, 2005.

F) As security for the Seller's promise to deliver up possession of the premises to the Buyer no later than 8:00 P.M. on August 30, 2005, the Seller shall deposit with Attorney Andrew Bram at the closing from the proceeds of the sale the sum of fifteen thousand ($15,000.00) dollars which will be accounted for at the time of delivery of the premises in accordance with said terms. If the Seller and/or Seller's son shall fail to vacate completely said premises before 8:00 P.M. on August 30, 2005, the said sum of $15,000.00 deposited in escrow with Attorney Bram shall be used to pay Buyer's costs and expenses occasioned by Seller's

and/or Seller's son's failure to so vacate timely, including, but not limited to, storage charges, increased moving costs, moving company cancellation fees, hotel expenses, costs of eviction (including, but not limited to, court costs, attorney's fees, constable fees, moving company fees and storage fees). After payment of Buyer's expenses as set forth above, any remaining escrowed funds shall be refunded to Seller. If Seller and Seller's son vacate the premises in accordance with the terms of this Agreement before 8:00 P.M. on August 30, 2005 and leave the premises broomclean and in the same condition as at the time of Buyer's inspection, reasonable wear and tear excepted, then said sum of $15,000.00 shall be immediately refunded to Seller. If Buyer's costs and expenses occasioned by Seller's and/or Seller's son's use and occupancy of the premises after 8:00 P.M. on the date of the closing exceed $15,000.00, Seller shall be liable to Buyer for the excess above $15,000.00.

G) In addition to said sum of $15,000.00, a sum equal to 21 days per diem charges calculated as set forth in subparagraph D above shall be withheld from Seller's proceeds at closing and deposited with Attorney Edwin J. Smith at closing. If Seller and Seller's son vacate the premises before 8:00 P.M on August 30, 2005, any unused portion of this amount shall be refunded forthwith by Attorney Smith to the Seller.

H) During his period of use and occupancy, Seller will maintain insurance on his personal belongings, and Buyers shall have no liability for any loss or damage with respect to such personal property. Seller agrees to indemnify and hold harmless the Buyers for and from all claims for personal injury suffered by Seller, his servants, guests, employees or invitees, or property damage that may arise as a result of the Seller and/or Seller's son being in occupancy as provided herein. Further, Seller shall indemnify and hold Buyers harmless from and against any damage or injury to the premises (reasonable wear and tear excepted) which should occur during Seller and/or Seller's son's period of use and occupancy. The indemnifications in this paragraph shall include costs and fees, including reasonable legal fees, required to enforce this paragraph.

I) Buyers shall not be deemed to have accepted the condition of the premises until their final "walk-through" at the time of Seller's vacancy.

J) If Seller and Seller's son do not vacate the premises by 8:00 PM on August 30, 2005, Seller and Seller's son will be subject to immediate eviction. If Buyers are compelled to file a Summary Process action to gain possession, Seller agrees that this Agreement may be submitted to the Court as an Agreement for Judgment, with appeal rights waived, and execution to issue forthwith.

06/03/05 16:01 FAX  ☒15

47. Seller represents to Buyer that all permanent fixtures servicing the premises including, but not limited to, the hot water heater, furnace, stove and air conditioning equipment, if any, are owned by the Seller and are not rented or leased.

48. ~~Seller represents and warrants to Buyer that the driveway serving the premises is not a common driveway shared with an abutter.~~

*[handwritten in margin: P.H. / JCM / TJD]*

49. At the reasonable request of the attorney certifying title to Buyer's lender and/or Buyer, the closing date may be extended for one (1) additional business days after the scheduled closing date, without payment of any penalty or additional consideration by Buyer.

50. Seller has received no written notice of and has no actual knowledge of the following:

   a. Any litigation pending or threatened by or against the Seller with respect to the premises;
   b. Any violation of any federal, state or local environmental, sanitary, health or safety statute, ordinance, code, by-law, rule or regulation affecting the premises; or
   c. Any underground fuel storage tanks on the premises.;

51. A firm commitment as that term is used in paragraph 26 shall mean a written commitment with no conditions beyond Buyer's reasonable ability to meet. In pursuit of diligent efforts to obtain a mortgage commitment, Buyer needs apply to only one Lending institution.

Phillip Hyde *[signature]*
J. Cooper McDonald *[signature]*

Timothy D. Dansfield *[signature]*